**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CONSOLIDATED COMPANIES, INC.                    CIVIL ACTION

VERSUS                                          NO. 13-4704

GENERAL ELECTRIC CAPITAL, CORP.                 SECTION "B"(5)

<u>ORDER AND REASONS</u>

<u>Cause of Action and Facts of Case</u>

This case arises out of a financing agreement between Plaintiff Consolidated Companies Inc. (Consolidated) and Defendant General Electric Capital Corp. (GECC). Consolidated was purchased in 1986 by three investors with money furnished by GECC. Consolidated filed for bankruptcy relief in 1991. To satisfy creditors, the bankruptcy court issued the "Debtors' Second Amended Joint Consensual Plan of Reorganization Under Chapter 11 of the Bankruptcy Code" (the Plan). GECC, as one of Consolidated's creditors, was granted warrants to purchase up to thirty percent (30%) of stock in the newly restructured Consolidated pursuant to the "Warrant to Purchase Common Stock of Consolidated Companies, Inc." (Warrant Agreement). At a later date, Consolidated repurchased two-thirds of the warrants from GECC – leaving one-third of the warrants still in GECC's possession.

The Warrant Agreement, per its terms, contained an expiration date of July 23, 2012. (Rec. Doc. No. 1-3). As of the

1

expiration date, GECC had not exercised the remaining warrants to purchase stock. However, on May 30, 2013, Consolidated claims that counsel for GECC contacted Consolidated requesting information on the warrants as a preliminary step to purchase stock. This caused Consolidated to bring the instant action for declaratory relief. Consolidated seeks a judgement declaring that:

> (1) The Warrant, providing GECC with the ability to require Consolidated to repurchase warrant stock, expired unexercised on July 23, 2012.
> (2) Because GECC failed to exercise its option under the Warrant on or before July 23, 2012, GECC can no longer exercise the Warrant.
> (Rec. Doc. No. 1)

In response, GECC asserts several affirmative defenses. Chiefly, it claims that it did not exercise the warrants before the expiration date because Consolidated concealed the fact that in 2010 it sold assets to Reinhart Foodservice, L.L.C. (Reinhart) - which made the stocks' value far higher than they were before the sale. (Rec. Doc. No. 10 at 2-3). GECC also alleges a counterclaim against Consolidated for breach of contract, based on Consolidated's failure to supply GECC with information about the sale to Reinhart. Further, GECC filed a third-party complaint against Comerica Bank. Comerica maintains an escrow account of $7 million that was established in 2010 after the sale by Consolidated to Reinhart. The escrow account was formed under the GE Escrow Agreement ("Escrow Agreement") to protect Reinhart

2

against any claims made by GECC pursuant to the Warrant Agreement. GECC now seeks the funds in the account.

**Nature of Instant Motion and Relief Sought**

In the instant motion, Consolidated seeks judgement on the pleadings and dismissal of GECC's counterclaim and third-party claim under Federal Rules of Civil Procedure 12(b) and 12(c). (Rec. Doc. No. 23). Consolidated asks the Court to grant judgement that the warrants have expired, and that GECC has no further right to exercise the option to purchase stock in the Warrant Agreement. (Rec. Doc. No. 23 at 2). In the alternative, Consolidated asks the Court to dismiss the counterclaim filed by GECC on the basis that GECC fails to state a claim. Further, Consolidated avers that the third-party claim filed by GECC against Comerica Bank should be dismissed because GECC is not a third-party beneficiary to the Escrow Agreement.[1]

Accordingly, and for the reasons enumerated below **IT IS ORDERED** that Consolidated's Motion for Judgement on the Pleadings (Rec. Doc. No. 23) is **DENIED.**

**IT IS FURTHER ORDERED** that the Parties are given an

---

[1] In a separate series of motions, Comerica Bank has requested leave to deposit funds with the Court and commence an interpleader action to resolve Consolidated and GECC's claims to the Escrow Agreement funds. (Rec. Doc. No. 28). Consolidated has countered that the request should be denied and, in the event that GECC is entitled to pursue a third-party beneficiary claim to the escrow funds, that claim should be resolved through arbitration. (Rec. Doc. No. 35). As discussed *infra.*, the Court does not resolve the interpleader/arbitration conflict here – instead determining it prudent to allow the parties to supplement their motions on the issue, should they find it necessary.

opportunity to submit supplemental briefing on whether GECC's claim to the GECC Escrow Funds should be compelled to arbitration, or whether the funds may be deposited with the Court and subject to an interpleader action.

**Law and Analysis**

**I. Rule 12(c) Standard**

Rule 12(c) permits **"**[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). Such motions are prudent "when all material allegations of facts are admitted in the pleadings and only questions of law remain." *Brown v. Walraven*, 9 F.3d 1546 (5th Cir. 1993). A court reviewing a 12(c) motion may consider "the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). The appropriate standard for dismissal is the same standard applied in 12(b) cases. *See id.* (citing cases). Namely, if, assuming all facts in their

favor, the nonmoving party is unable to raise a claim to relief beyond a speculative level, then the action must be dismissed. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

## II. The Plan and Warrant Agreement

Consolidated's Motion for Judgement on the Pleadings is focused one primary question: Is GECC still entitled to exercise the warrants to purchase stock, or have the warrants expired unexercised? In order to decide this question, the Court must first determine what terms control the expiration of the warrants - the Bankruptcy Plan, the Warrant Agreement, or some combination of the two. If the Bankruptcy Plan exclusively controls the date of expiration, as GECC argues, then the warrants have not expired, and Consolidated's Motion for Judgement on the Pleadings lacks merit on the expiration issue.[2] Alternatively, if the terms of the Warrant Agreement exclusively control expiration then the warrants have expired,[3] and the Court must determine if any legal cause exists to extend the expiration date.

Rather than choosing between the terms of the Plan and the Warrant Agreement, Consolidated suggests that the two can in fact be read in unison. It argues that the Bankruptcy Plan allowed GECC to exercise the warrants "at any time" subject to "the

---

[2] The terms of the Plan state that, subject to a refinancing option that was exercised in this case, the warrants were "exercisable at any time." (Plan, Rec. Doc. No. 38, Ex. A at p. 53).

[3] The Warrant Agreement states the "expiration date" is July 23, 2012. (Warrant, Rec. Doc. No. 1-3, Ex. A at p. 4).

5

prescribed period established in the attached form Warrant contract." (Rec. Doc. No. 49 at 4). The Warrant Agreement, in turn, set out the expiration date for the warrants - thus presenting no conflict between the two agreements. The Court agrees.

A bankruptcy plan of reorganization "should be construed basically as a contract." *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981). Thus, in interpreting the construction of the Plan the Court is guided by Louisiana contract law.[4]

Where terms in a contract seemingly conflict, Louisiana law instructs that the Court should examine the contract as a whole and determine the true intent of the parties. *Bolding v. Eason Oil Co.*, 248 La. 269, 279 (1965). However, the Court should not seek out conflict or ambiguity in contracts where terms can be read in harmony. *Cf. Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998) ("[A] contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight."). Rather, a court should only conclude that terms are

---

[4] The Bankruptcy Plan states that "the internal laws of the State of Louisiana shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan, without regard to the conflict of laws provisions of the State of Louisiana, except as otherwise provided in such document." (Plan, Rec. Doc. No. 38, Ex. A at p. 71, art. 16.18). Both parties agree that this provision makes the construction of the Plan governed by Louisiana law. *See* (Rec. Doc. No. 10 at ¶ 24); (Rec. Doc. No. 49 at ¶ 10).

in conflict or ambiguous where the contract is "uncertain as to
the parties' intentions and susceptible to more than one
*reasonable* meaning under the circumstances and after applying
established rules of construction." *Lloyds of London v. Transcon.
Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996) (emphasis
added). Where contract provisions can be read without producing
variation between their meanings, the Court should not invite
conflict between the terms.

In determining whether a conflict actually exists between
contract clauses, a reviewing court is instructed that later
clauses in a contract may provide more specificity to more
general preceding terms. *See Friedrich v. Local No. 780, IUE-AFL-
CIO-CLC*, 515 F.2d 225, 227 (5th Cir. 1975) (holding "a
contractual clause must be read in its context, and 'a subsequent
specification impliedly limits the meaning of a preceding
generalization.'"(internal citation omitted)). Thus, where a
later clause alters a preceding clause, a court should not
necessarily find the clauses in conflict, but instead determine
whether the later clause can be read to explain the preceding
clause.

Here, the Bankruptcy Plan set out the general terms of the
warrants to purchase stock. The Warrant Agreement set out the
more specific terms of the warrants, and how they were to be
exercised. The most reasonable interpretation for reconciling

these two provisions, without seeking a conflict between the terms, is the interpretation provided by Consolidated - i.e., the Bankruptcy Plan permitted the execution of the warrants "at any time" subject to the expiration date contained in the Warrant Agreement.

A contrary reading of the documents would assume that the parties agreed to conflicting terms that could not be reconciled. It would further ignore the general principle of interpreting a later clauses as limiting preceding clauses. *Friedrich*, 515 F.2d. at 227. Here, the more specific language of the Warrant Agreement clearly limits the generalizations in the Bankruptcy Plan. Thus, the Warrant Agreement's terms control the expiration date.

The Court is also guided by the fact that the Bankruptcy Plan and the Warrant Agreement established an option contract, wherein GECC was permitted to purchase stock within its discretion. Louisiana law requires option contracts to be for a set duration. La. Civ. Code art. 1933 ("An option is a contract whereby the parties agree that the offeror is bound by his offer for a *specified period of time* and that the offeree may accept within that time.") (emphasis added); *Cf. Crawford v. Deshotels*, 359 So. 2d 118, 122 (La. 1978) (stating perpetual option contracts invalid under La. Civ. Code art. 2462, the precursor to art. 1933). GEEC's interpretation of the Plan would therefore require the Court to interpret the option agreement in a manner

8

contrary to law, i.e. creating an unenforceable perpetual option contract. The Court finds no reason to believe that the parties here formed an invalid agreement. The more reasonable interpretation of the contract language is that the Warrant Agreement articulated the expiration date for the option contract referenced in the Bankruptcy Plan.

GECC offers two arguments in reply: (1) the terms of the Bankruptcy Plan were a final judgement of the bankruptcy court and therefore the "exercisable at any time" language cannot be altered by the Warrant Agreement; and (2) the terms of the Warrant Agreement indicate that, in the event of any conflict between the Plan and the Warrant Agreement, the Plan controls – signifying that the "exercisable at any time" language should prevail over the Warrant's expiration date. Both of these arguments presume some conflict between the two provisions. As the Court has already stated, no conflict exists. The terms can be read in unison. Therefore, there is no reason for the Court to address GECC's arguments premised on conflict between the terms.

**III. Expiration of Option**

Having determined that the expiration date contained in the Warrant Agreement controls, the Court now moves to a consideration of whether – despite the expiration date – GECC is still permitted to exercise the warrants. Per the terms of the Warrant Agreement, Illinois law controls the execution of the

warrants.[5]

Under Illinois law, "[n]otice of a decision to exercise an option is only sufficient to bind parties if in exact accord with option terms ." *Keene Corp. v. Chapple,* 716 F.2d 475, 477 (7th Cir.1983). "Illinois law is particularly adamant in requiring that option contracts be strictly construed and that an option be considered exercised only if the person holding the opting power adheres exactly to the conditions precedent to its effective consummation.." *Wilson Sporting Goods Co., a Delaware Corp. v. Penn Partners*, 2004 WL 2445372 (N.D. Ill. Oct. 28, 2004). Consolidated heavily relies on these standards in arguing that because GECC failed to exercise the warrants by the Agreement's expiration date, the warrants are void.

GECC does not disagree with the general principle that option contracts are strictly construed under Illinois law, but contends that it is entitled to specific performance of the option contract in this case because Consolidated breached its implied covenant of good faith and fair dealing, as well as particular contractual obligations. Specifically, GECC argues it was entitled to notice of the sale of Consolidated's assets, which was not provided.

The Warrant Agreement entitles GECC to "the same rights to

---

[5] *See* (Warrant, Rec. Doc. No. 1-3, Ex. A at ¶ 18.9). Parties are in agreement that this is the case. *See* (Rec. Doc. No. 10 at ¶ 24); (Rec. Doc. No. 23-1 at 5).

receive notice of corporate action as any holder of Common
Stock." (Warrant, Rec. Doc. No. 1-3, Ex. A at ¶ 5.2). Notice
under the Agreement must be provided "in writing and either
delivered in person with receipt acknowledged or sent by
registered or certified mail, return receipt requested, postage
prepaid" to GECC's last known address. (*Id.* at ¶ 18.2).  Further,
GECC had a right under the Warrant Agreement to exercise the
warrants immediately prior to any plan by Consolidated to "sell,
transfer or otherwise dispose of all or substantially all its
property, assets or business to another corporation." (*Id.* at ¶
4.8). Moreover, Consolidated was required under the Warrant
Agreement to obtain consent before entering into any transaction
that "would cause an adjustment of the Current Warrant Price . .
." (*Id.* at ¶ 4.11). Lastly, Consolidated was required to refrain
from "any action" intended to "avoid or seek to avoid the
observance or performance of any of the terms of" the Warrant
Agreement, and was under a general duty of "good faith [to]
assist in the carrying out of all such terms and in the taking of
all such actions as may be necessary or appropriate to protect
the rights of [GECC] against impairment." (*Id.* at ¶ 6). GECC
claims Consolidated failed in its obligations under the
Agreement.

Every contract under Illinois law contains an implied duty
of good faith and fair dealing, including option contracts.

11

*Martindell v. Lake Shore Nat. Bank*, 15 Ill. 2d 272, 286 (1958).
In *In re Edgewater Med. Ctr.*, 373 B.R. 845 (Bankr. N.D. Ill.
2007), a case with a similar option agreement to purchase
property as the one here, the United States Bankruptcy Court for
the Northern District Illinois, interpreting Illinois law,[6] found
that "withholding key information" of the value of the property
subject to the option agreement "breached the covenant of good
faith and fair dealing" such that strict compliance with the
option's expiration date was excused. *Id*. at 858. Similarly in
this case, GECC contends that its failure to comply with the
expiration date should be excused based on Consolidated's
withholding of information.

GECC's argument that Consolidated failed to provide
information is stronger than in *Edgewater*, since the Warrant
Agreement here contained specific requirements that Consolidated
provide information to GECC that it allegedly did not provide.
*See supra*. Thus, GECC need not only rely Consolidated's implied
covenant of good faith, but is also capable of pointing to
particular provisions in the contract compelling Consolidated to

---

[6] Consolidated argues in its Reply that the Court should not be
persuaded by this authority because it is not authority from the Illinois
Supreme Court. (Rec. Doc. No.49 at 5). Although the Court is aware of its
obligation to apply state law in diversity cases as articulated by the state's
highest court, *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 488 (5th Cir.
1979), case law from federal courts interpreting state law is useful
persuasive authority for a federal court determining how the state's highest
court would answer an unclear state law question. As articulated *infra*. the
Court does not find the Illinois Supreme Court case law cited by Consolidated
to resolve the conflict presented in this case. Thus, it is appropriate for
the Court to consider other persuasive authority.

give notice.

Consolidated's arguments to the contrary are unpersuasive. First, Consolidated argues that *Edgewater* is factually dissimilar because there a party actively "prevented" the execution of the option, and did not passively withhold information. (Rec. Doc. No. 49 at 6). Consolidated either misreads *Edgewater*, or attempts to mislead the Court as to its holding. Nowhere in *Edgewater* does the court find that the breaching party actively prevented execution of the option by engaging in conduct tantamount to "h[olding] down the arms" or "kidnaping" the party attempting to exercise the option – as counsel for Consolidated suggests. (*Id.*). Rather, much like here, the allegation in *Edgewater* was that the breaching party had intentionally withheld information that, if known, would have increased the value of the property subject to the option.[7] Counsel for Consolidated's attempt to convince the Court that *Edgewater* is distinguished on that basis

---

[7] Specifically, the withholding of information included:

1) concealing critical information relating to the valuation of the adjacent properties and the benefit to [the non-breaching party] if the option were exercised; 2) causing inaccurate and overvalued appraisals to be prepared and presented to [the non-breaching party]; 3) influencing [the non-breaching party]'s board into continuing to lease rather than exercise the option to buy by representing that a full analysis of the buy versus lease decision was complete when, in fact, it was not; and 4) further manipulating the board into believing that the appraisals were commissioned by Henry Zeisel when they were not.

*In re Edgewater Med. Ctr.*, 373 B.R. 845, 857 (Bankr. N.D. Ill. 2007) (internal citation omitted).

is without merit.

Consolidated next contends that other precedent, separate from *Edgewater*, requires a different result. The Court disagrees. The cases cited by Consolidated do not involve the type of intentional withholding of information alleged here. Instead, the cases purely involve parties attempting to exercise an option, but in a manner not authorized by the contract. *See Dikeman v. Sunday Creek Coal Co.*, 184 Ill. 546, 551 (1900) (court could not extend option deadline where failure to exercise by date was solely the result of party's negligence); *Wilson Sporting Goods Co. v. Penn Partners*, 03 C 5236, 2004 WL 2445372 (N.D. Ill. Oct. 28, 2004) (refusing to enforce option because notice of intent to exercise the option included outdated rider form and party failed to comply with environmental reporting provisions); *Epton v. CBC Corp.*, 48 Ill. App. 2d 274, 284 (Ill. App. Ct. 1964) (refusing to enforce option where party accepted orally rather than by writing, where contract required written acceptance); *Swiss Bank Corp. v. Dresser Indus., Inc.*, 141 F.3d 689, 692 (7th Cir. 1998) (finding that under Delaware law the fact that the expiration date of a warrant occurred on a holiday did not extend the expiration date). The cases cited by Consolidated are inapposite. Consolidated's attempt to equate the negligence of an optionee with the misconduct of an optionor is misguided.

Further, the cases cited by Consolidated do not involve a

14

specific agreement to provide information relating to the
execution of the option, as is the case with the Warrant
Agreement. Indeed, in *Dikeman v. Sunday Creek Coal Co.* - which
Consolidated claims is "the leading case" on option contracts
under Illinois law - the court specifically held that "the only
stipulation of the parties was as to time" and did not contain
"any corresponding right or privilege of the [optionor], and the
only stipulation was that the right should be exercised at a
certain time." 184 Ill. 546, 551. Here, unlike in *Dikeman*, the
Warrant Agreement *did* place corresponding responsibilities on the
optionor - requiring Consolidated to provide certain information
to GECC. While Consolidated continually claims in its Motion that
GECC "forgot" to exercise the option or did not exercise the
option because of "negligence" this mischaracterizes GECC's
argument. Far from arguing it forgot to exercise the option, GECC
argues that Consolidated breached its contractual obligations by
withholding crucial information.[8]

Similarly, Consolidated is incorrect that GECC's affirmative
defenses are subject to the heightened pleading requirement of
Rule 9(b). None of GECC's defenses rely on establishing fraud or
mistake, the only actions subject to the heightened pleading

---

[8] The fact that the contract places responsibilities on Consolidated
additionally makes the contract bilateral in nature, unlike the unilateral
contracts that Consolidated cites in support of its Motion to Dismiss GECC's
Counterclaim. *See* Rec. Doc. No. 23-1.

requirement. Fed. R. Civ. Pro. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) (refusing to extend heightened pleading requirement to causes of action other than fraud or mistake). Rather, all of the affirmative defenses contend that Consolidated has failed to meet its contractual obligations. *See* (Rec. Doc. No. 10 at 1-3). Consolidated provides no argument in its Motion as to why the Court should construe GECC's claims as alleging fraud, other than asserting it to be the case.[9] The Court finds no reason to hold the affirmative defenses to the heightened pleading requirement of Rule 9(b).

Based on the above summarized law, Consolidated has failed to established they are entitled to judgement as a matter of law at this stage on the option issue, or that Consolidated's breach of contract claims should be dismissed.

**IV. Third-Party Beneficiary Claim**

The last issue the Court must decide is Consolidated's Motion to Dismiss GECC's third-party beneficiary claim. Here the

---

[9] Consolidated goes so far as to accuse GECC of "merely recit[ing] the elements of fraud." This is not the case. Nowhere in its Answer does GECC even mention fraud, much less blindly recite the elements of fraud. *See* (Rec. Doc. No. 10). Consolidated's claim is wholly without merit, and suggests a conscious disregard for the actual content of the Answer.

Court is guided by Michigan law, which controls the interpretation of the Escrow Agreement. *See* (Escrow Agreement, Rec. Doc. No. 23-1, Ex. C at ¶ 4.4).

A contract "undertaken to give or to do or refrain from doing something directly to or for" a person not a party to the contract may be read to include third-party beneficiary rights under Michigan law. Mich. Comp. Laws § 600.1405. But "only *intended* third-party beneficiaries, not *incidental* beneficiaries" may claim third-party beneficiary rights. *Koenig v. City of S. Haven*, 460 Mich. 667, 679 (1999).

The Escrow Agreement here, although an agreement between Consolidated and Reinhart, specifically makes mention of GECC. Indeed, the title of the Agreement is the "GE Escrow Agreement." (Escrow Agreement, Rec. Doc. No. 23-1, Ex. C). The Agreement further includes a section on disbursement of escrow funds to GECC. (Escrow Agreement, Rec. Doc. No. 23-1, Ex. C at ¶ 2.1).

Consolidated contends that GECC has failed to establish that it "directly" benefits from the Agreement. More specifically, Consolidated argues that Consolidated and Reinhart are the only parties named in the agreement who can make claims to the Escrow funds, and no promise is made to or for the benefit of GECC in the Escrow Agreement. Consolidated's argument is unpersuasive.

Although true that a party must directly benefit from a contract in order to be considered a third-party beneficiary,

17

this does not mean that a specific promise must be made to that party. Rather, a promise need only be made for the third-party's "benefit." Mich. Comp. Laws § 600.1405. Michigan law does not even require a party to be *named* in an agreement for the party to be found a third-party beneficiary, so long as the benefit to the third-party becomes apparent.  Mich. Comp. Laws § 600.1405(2)(b).

Here, not only was GECC named in the Agreement, the Agreement included specific instructions on how to distribute escrow funds to GECC. (Escrow Agreement, Rec. Doc. No. 23-1, Ex. C at ¶ 2.1). The clear objective of the Agreement was to directly benefit GECC by protecting funds for possible later distribution to GECC. This purpose was not merely incidental, but intentional by the parties that formed the Agreement. For these reasons, Consolidated again fails to satisfy the standard for judgement as a matter of law.

**V. Motion to Compel Arbitration and Motion to Institute Interpleader Action**

Having decided that GECC's third-party beneficiary claim may proceed, the Court must now determine whether the claims made by Consolidated and GECC to the Escrow funds may be decided in this Court or must be submitted to arbitration. However, because the Court recognizes that its decision in this Order may alter the parties' arguments on the arbitration issue, the parties are to be given 14 days from the issuance of this Order to supplement

their briefing on the arbitration issue if they find it
necessary.

Accordingly, and for the reasons enumerated above **IT IS
ORDERED** that Consolidated's Motion for Judgement on the Pleadings
(Rec. Doc. No. 23) is **DENIED.**

**IT IS FURTHER ORDERED** that the Parties are given an
opportunity to submit supplemental briefing within 14 days of
this Order's issuance on whether GECC's claim to the GECC Escrow
Funds should be compelled to arbitration, or whether the funds
may be deposited with the Court and subject to an interpleader
action.

New Orleans, Louisiana, this 14th day of March, 2014.

UNITED STATES DISTRICT JUDGE